(a) A strip of ground, sought to be taken by a borough to widen a street, was not within the corporate limits as originally established, but lay along a common highway, afterwards a turnpike, and was brought into the borough by a later act extending its limits.

1. On a bill filed to restrain the taking, there being no proof of dedication by the owner, or of proceedings had by the corporate officers, by ordinance, law, or regulation, or by proceedings in the Court of Quarter Sessions authorizing the taking of the property for street purposes, it was not error to award and continue a preliminary injunction until final hearing.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 171 July Term 1889, Sup. Ct.; court below, No. 3 September Term 1889, C. P. in Equity.

On June 25, 1889, John Irvin, Jared F. Irvin, Martha Thompson and Annie M. Irvin, filed a bill in equity against E. M. Thompson, burgess, and C. E. Patton and others, town council of the borough of Curwensville, and Ira Shaffer and others, in which they averred:

—————————————————————————

* This case and that preceding it were argued by advancement at the October Term.

Statement of Facts.

1. That they were the owners of a certain lot or piece of ground situate in the said borough of Curwensville, bounded as follows, viz.: On the south by extension of State street, formerly known as the Erie turnpike; west by Locust street; north by land late of Wm. Irvin estate; and on the east by lot of John Irvin; being about 225 feet front on said turnpike, by about 450 feet deep; and they had been in possession thereof for a number of years past.

2. That the said defendants, without any authority of law, had forcibly taken possession of a portion of said lot of ground, to wit: the southwest corner thereof, and were cutting down and grading, opening and widening the street at said point, and had signified their intention to forthwith proceed and thus occupy, possess and cut down a strip of ground along the entire front of said lot, a width of about fourteen feet; which strip they had surveyed and staked off, and were claiming the right, on behalf of said borough, to use and occupy the same for street purposes, and by way of widening State street at said point.

3. That the said burgess and town council had not paid or offered to pay, the complainants any compensation for the said strip of ground; neither had they asked permission of them for thus taking said ground, nor made any effort to agree with them for compensation, but illegally claimed the right to take the same without compensation.

4. That said burgess and town council had not proceeded according to law to widen or straighten said street; that they had not given due and personal notice of any proceeding to change or grade said street, and had not designated any time and place where the complainants might be heard in relation thereto.

5. That said Ira Shaffer was street commissioner of said borough, and he, with the said Grant Gates, James T. Brown, James W. Harley, Alexander Skipper, Thomas McCasker and J. W. Harvey, employees under him, were all working upon said strip of ground, under the said burgess and town council.

The bill prayed for an injunction, for a decree requiring the payment of damages already sustained, and for other and further relief, etc.

A preliminary injunction was awarded, as prayed for, and

served; and on July 13, 1889, a motion of the plaintiffs to continue the injunction was heard on affidavits filed by both parties.

On July 18, 1889, KREBS, P. J., filed the following opinion and decree:

[The essential and material facts are not doubtful, but clearly exist, and are beyond controversy.] [1]   They are as follows:

1. That as early as 1812, at least, the town of Curwensville was laid out by John Curwen, who was then the owner of the tract of land surveyed on warrant, dated February 2, 1786, to John Buchanan, and patented on December 10, 1798, to John Curwen. This tract by a re-survey made upon an order by the board of property, contained 292 acres, 89 perches and allowance.

2. That the portion of the tract now the subject of the controversy here, was not within the limits of the town plot, as laid out at the time mentioned. This fact, like the preceding, is clearly apparent from the recitals in the deeds of record from John Curwen, down to the conveyance to John Irvin, the father of the present complainants; as well as by the fact that it was not in the original incorporation of the borough of Curwensville, on February 3, 1851, by the special act approved of that date, P. L. (1852) 672.

3. No plan of the plot of the town, as originally laid out about 1812, can now be found, and none is recorded; but it seems clear that the street called State, and which, if prolonged from Locust street east, would extend along the front of this property in dispute, was laid out seventy feet wide, in the town plan of Curwensville proper, in 1812.

4. [That there is no evidence that the public highway which evidently had been used for years, and in front of this property in 1812, was other than the ordinary public road of ordinary width; but in 1812, it was covered apparently by the charter granted to the Susquehanna, Waterford & Erie Turnpike Company, which authorized the road to be opened sixty feet wide, and this was, on March 27, 1855, by statute, reduced to thirty feet.] [2]

5. That by act of March 21, 1856, P. L. 144, the limits of Curwensville borough were extended so as to include the pro-

perty where this controversy arises, and this statute contains no other provision whatever.

6. That by § 8, act of February 3, 1851, P. L. (1852) 672, power was given to the burgess and town council, "to make, erect, alter, revise, repeal or amend all by-laws, rules, regulation and ordinances, as shall be determined by a majority of them, necessary to promote the peace and good order and benefit and advantage of said borough, and particularly providing for the regulation, improving, repairing and keeping in order, the streets and alleys."

7. [That in 1870, the complainants built a stone wall on the front line of the property, where the dispute exists, and it has remained unchanged, until preparation was made to build a new wall three and one half feet farther back from the line, and where the wall of 1870 was built.] [3]

8. That the extension of the north boundary of State street eastwards from Locust street, would cross the property of complainants inside of the point at which the foundation of the store-house and dwelling formerly stood, and about eighteen and one half feet back from the line of the stone wall of 1870.

9. [That the complainants have not been shown to have dedicated the locus in quo to public use, so as to deprive them of control thereover, and the borough has obtained no prescriptive title thereto. That the testimony on part of the respondents in relation to the use of the locus in quo is too vague, indefinite, and uncertain, to justify any court in depriving the owners of property which they otherwise hold by a perfect legal title.] [4]

10. That the line of State street, on the north side, was not a prolongation or extension of the line of the Susquehanna, Waterford & Erie Turnpike, on its northern side, in front of complainants' property.

11. [That the respondents are widening or attempting to widen the street in front of complainants' property without any legal authority so to do having been first had.] [5]

12. That no ordinance was passed by council, or action taken, so far as any evidence appears before the court, concerning the taking possession by the servants and employees, of the complainants' property, and no petition to the Court of Quarter Sessions, and no compensation paid, or tender to the complainants for the property taken.

Having ascertained that the locus in quo was not in the original town of Curwensville, as laid out by John Curwen, and that State street in the town was laid out seventy feet wide, would the extension of the limits of Curwensville borough, in 1856, have the effect, without more, of widening State street in front of the property in dispute? This will surely not be claimed by the learned counsel for the respondents. After the extension of the lines of Curwensville borough, streets and alleys, within the added territory, could only be opened or widened, in strict conformity to law, either under the special powers conferred by the charter of incorporation, or by application to the Court of Quarter Sessions.

The power conferred on the burgess and town council, by the charter, only confers power for regulating, improving, repairing and keeping in order the streets and alleys. This language does not confer the power to open or widen any streets: Sharett's Road, 8 Pa. 89; Newville Road Case, 8 W. 172.

The act of April 22, 1856, P. L., 525, applies to the authorities of Curwensville, and all streets and alleys therein must now be opened and widened in conformity with its provisions, and by petition to the Court of Quarter Sessions of the county: Brady Street, 99 Pa. 591.

Section 8, article XVI., constitution of 1874, requires that compensation shall be paid or secured, before the taking or destruction of private property for highways, by municipal corporations. It has not been alleged by the respondents that any proceedings were had by the town council, by ordinance, by law or regulation, authorizing the taking of the property in question for street purposes. It has been seen, that such action would not have been authorized by the charter, if it had been taken. It is admitted that no application has been made by petition to the Court of Quarter Sessions of this county, for appropriation of the property, and no offer or tender of compensation or security therefor, before entry or even since.

[So far then, the highway in front of complainants' lots, remained as the public turnpike, as constructed and used under the charter of the turnpike company and its supplements, until the limits of the borough were extended in 1856, and no legal action has been taken to appropriate the locus in quo up to

the date of this hearing. The property of the complainants being taken, not under color of legal authority, but outside of all law or proceedings authorizing the taking, how can this entry be justified? It is nothing less than the entry of so many trespassers without shadow of claim or right to the property, and its destruction by force.] [6] This, in our judgment, the law cannot permit, and the only important question left is that of remedy.

It is contended by the learned counsel for the respondents, that the remedy of the complainants is under the provisions of the act of May 24, 1878, P. L. 129, vesting jurisdiction in the Court of Common Pleas to appoint viewers, etc. But this act only applies to a change of grade in an existing street, and does not apply to the case of opening or widening a street: Brady Street, 99 Pa. 591. To the same effect is New Brighton Bor. v. Church, 96 Pa. 331.

This act of 1878 did not repeal the act of April 22, 1856, P. L. 525, and its provisions are in full force, and apply to the case in hand. By its provisions, it is directed that, "whenever the burgess and town council of any borough shall open or be about to open any streets or alleys therein, or to widen or extend the same, it shall be lawful for said burgess and town council or a majority of them to apply by petition to the Court of Quarter Sessions of the Peace, of the proper county," etc. Prior to the passage of this act, the proceedings, as applicable to Curwensville borough, must have been had under the general road law of 1836: Sharett's Road, 8 Pa. 89. The words, "it shall be lawful," in the act of 1856, supra, are to be understood as indicating that the proceedings are to be conducted no longer under the general road law of 1836, but under the act of 1856; and this act clearly indicates, that before entry upon and taking the property, the necessary legal steps shall be taken as indicated by its provisions.

But as has been seen, no legal steps have been taken, and the only question is: Will the remedy by injunction apply? Section 8 of article XVI. of the constitution of 1874, has a clearly expressed meaning: "A municipal corporation shall make just compensation for property taken, injured or destroyed, . . . . . which compensation shall be paid or secured before such taking, injury, or destruction." Surely this language

Opinion of Court below.

does not indicate that the taking shall be permitted, and that compensation shall be paid or secured afterwards, at the end, perhaps, of protracted and expensive litigation, in which the property owner is compelled to take the initiative, and have the burden of proof in all points cast upon him. In interpreting the act of 1856, in the manner we have, we only give force and effect to this constitutional provision requiring compensation before taking.

Municipal authorities in the exercise of the power and authority vested in them, must pursue those vested powers strictly and in the method pointed out by statute. If they do not, their action is so far illegal and unwarranted as to justify the court in enjoining them from taking the unauthorized action: Shirk v. Bucher, 53 Pa. 94; St. Clair School Board's App., 74 Pa. 252; Conners' App., 103 Pa. 356. Conceding that an appeal to the court under the act of June 13, 1874, P. L. 283, or the act of May 24, 1878, P. L. 129, provided a remedy where the taking of the property had been done after and in pursuance of lawful proceedings had, they do not apply here, because the acts complained of are entirely contrary to the authority vested in the borough authorities. In all such cases injunction is the proper and only adequate remedy: Harper's App., 109 Pa. 9.

The action of trespass is not adequate. It will not prevent the re-entry and continuance of the like destruction of complainants' property. In order to oust the jurisdiction of a court of equity, there must not only be a remedy at law, but it must be an adequate remedy.

[The defendants do not claim title to the locus in quo, but the right to take the property by the right of eminent domain, vested in them by the commonwealth, and therefore ejectment is neither a proper nor adequate remedy. The bill is not to put the complainants in possession; the respondents do not pretend to hold the title adversely; the question is not title in the ordinary sense of rightful entry, independent of title.] [7]

We think, that upon full consideration had, a case has been shown to the court which authorizes and recognizes the issue and continuance of the injunction.

Now July 18, 1889, injunction continued. [8]

Syllabus.

Thereupon the borough took this appeal, assigning as error:
1–7. The portions of the opinion embraced in [ ]¹ to ⁷
8. The decree ordering the injunction continued.⁸

*Mr. Roland D. Swope* and *Mr. J. B. McEnally* (with them *Mr. D. W. McCurdy*), for the appellant.

*Mr. Thos. H. Murray* (with him *Mr. J. H. Orvis, Mr. J. F. Snyder* and *Mr. Cyrus Gordon*), for the appellees.

PER CURIAM:
The decree is affirmed and the appeal dismissed at the cost of the appellant.

